# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 08-0334V
**Filed: November 19, 2013**
**Reissued for Redaction: December 11, 2013**

* * * * * * * * * * * * * * * * * * * * * * * * * *

RODNEY CAUDILLO and     *
DINA CAUDILLO, parents of     *
R.P.C., a minor,     *
    *    Autism; Failure to Prosecute; Failure to
           Petitioners,     *    Follow Court Orders; Dismissal
    v.     *
    *
SECRETARY OF HEALTH     *
AND HUMAN SERVICES,     *
    *
           Respondent.     *
    *

* * * * * * * * * * * * * * * * * * * * * * * * * *

Richard Gage, Esq., Richard Gage P.C., Cheyenne, WY, for petitioners.
Lynn E. Ricciardella, Esq., U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION[1]

**Vowell,** Chief Special Master:

On May 6, 2008, Rodney Caudillo and Dina Caudillo, ["petitioners"] filed a claim for compensation pursuant to the National Vaccine Injury Compensation Program ["Vaccine Program" or "the Program"][2] on behalf of their son, R.P.C. Petitioners filed

---

[1] In the original decision, I informed petitioners they had 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy, as I intended to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 (2006)). Additionally, after allowing petitioners the opportunity to inform me of any objection (*see* Order, issued Nov. 19, 2013), I ordered the Court's Clerk to modify the case caption to reflect only the child's initials to avoid accidental disclosure of the minor child's name in later proceedings. *See* Order, issued Dec. 9, 2013. Thus, I am reissuing this decision with the name of the minor child redacted to initials. Except for that change and this footnote, no other substantive changes have been made.

[2] The National Vaccine Injury Compensation Program ["Vaccine Program" or "the Program"] is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. § 300aa-10 et seq. (2006) ["Vaccine Act" or "the Act"]. All citations in this Order to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

the short-form petition authorized by Autism General Order #1,[3] thereby joining the Omnibus Autism Proceeding ["OAP"].[4]

## I. Procedural History.

While causation hearings in the test cases were held and entitlement decisions were issued,[5] petitioners were ordered to file the medical records necessary to establish that their case was timely filed. *See* Order, issued May 19, 2008, at 1, 7. Petitioners filed their medical records on August 28, 2008. *See* Petitioners' Exhibits ["Pet. Exs."] 1-13.

Following resolution of the OAP test cases,[6] petitioners were ordered to inform the court whether they wished to proceed with their claim or exit the Vaccine Program. *See* Order, issued Sept. 23, 2010, at 2-3. Since they were *pro se* petitioners, they were required to file only a simple statement communicating their choice. They filed a statement indicating they wished to continue on October 11, 2011. That same day, Richard Gage was substituted in as attorney of record.

---

[3] Autism General Order #1 adopted the Master Autism Petition for Vaccine Compensation for use by petitioners filing claims intended to be part of the OAP. By electing to file a Short-Form Autism Petition for Vaccine Compensation petitioners alleged that:

> [a]s a direct result of one or more vaccinations covered under the National Vaccine Injury Compensation Program, the vaccinee in question has developed a neurodevelopmental disorder, consisting of an Autism Spectrum Disorder or a similar disorder. This disorder was caused by a measles-mumps-rubella (MMR) vaccination; by the "thimerosal" ingredient in certain Diphtheria-Tetanus-Pertussis (DTP), Diphtheria-Tetanus-acellular Pertussis (DTaP), Hepatitis B, and Hemophilus Influenza Type B(HIB) vaccinations; or by some combination of the two.

Autism General Order # 1. The text of Autism General Order #1 can be found at http://www.uscfc.gov/sites/default/files/autism/Autism. ["Autism Gen. Order # 1"], 2002 WL 31696785 (Fed.Cl.Spec.Mstr. July 3, 2002).

[4] A detailed discussion of the OAP can be found at *Dwyer v. Sec'y, HHS.,* No. 03-1202V, 2010 WL 892250, at *3 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

[5] The Petitioners' Steering Committee ["PSC"], an organization formed by attorneys representing petitioners in the OAP, litigated six test cases presenting two different theories on the causation of Autism Spectrum Disorders ["ASDs"].

[6] The Theory 1 cases are *Cedillo v. Sec'y, HHS.*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), aff'd, 89 Fed. Cl. 158 (2009), aff'd, 617 F.3d 1328 (Fed. Cir. 2010); *Hazlehurst v. Sec'y, HHS.*, No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), aff'd, 88 Fed. Cl. 473 (2009), aff'd, 604 F.3d 1343 (Fed. Cir. 2010); *Snyder v. Sec'y, HHS.*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), aff'd, 88 Fed. Cl. 706 (2009). Petitioners in Snyder did not appeal the decision of the U.S. Court of Federal Claims. The Theory 2 cases are *Dwyer v. Sec'y, HHS.*, No. 03-1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *King v. Sec'y, HHS.*, No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *Mead v. Sec'y, HHS.*, No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010). The petitioners in each of the three Theory 2 cases chose not to appeal.

After Mr. Gage entered his appearance, petitioners were ordered to file an amended petition that fully complied with § 300aa-11(c) and which clearly explained their theory of vaccine causation if they wished to continue with their claim. Order, issued Oct. 25, 2011, at 1-2. Over the next ten months petitioners were granted additional time to review R.P.C.'s medical records and obtain other records to support their claim. On August 31, 2012, the special master formerly assigned to the case granted Mr. Gage the authority to sign and serve a subpoena on Children's Hospital of San Diego.[7] The case was reassigned to me on September 6, 2012.

For the next eight months, I granted petitioners' requests for additional time to determine if they will continue with their claim and to pursue their theory of causation. Petitioners requested time to pursue further testing, *see* Status Report filed Oct. 12, 2012, and to obtain test results, *see* Status Report, filed Apr. 12, 2013. Although no amended petition was filed, it appeared petitioners were attempting to show that R.P.C. suffers from a mitochondrial disorder.

On April 24, 2012, petitioners filed the missing medical records from Rady Children's Hospital in San Diego. *See* Pet. Ex. 16. After reviewing these records I realized there was little evidence indicating that R.P.C. suffered from a mitochondrial disorder. *See infra* Section II. Still, I allowed petitioners additional time to obtain the report of a medical expert to support their claim. *See* Order, issued May 1, 2013, at 2.

On July 31, 2013, petitioners filed a status report, indicating they could not obtain an expert report because R.P.C.'s mitochondrial testing was not complete. Status Report at 1. Petitioners requested an additional 60 days to file their expert report. *Id.* Because they failed to include respondent's position on their request or provide any details about the testing still to be performed, I denied petitioners' request and informed them they must file a motion which complies with Vaccine Rule 19(b) if they required additional time. Order, issued Aug. 1, 2013, at 1.

On August 9, 2013, petitioners filed a motion for an extension of time, indicating R.P.C.'s upcoming appointments and asserting that they "have **tentatively** scheduled a muscle biopsy on October 23, 2013. Motion at 1 (emphasis added). Petitioners requested an extension until October 25, 2013. *Id.* Although petitioners attached a document verifying R.P.C.'s appointments, they did not provide any proof of a scheduled muscle biopsy. Thus, I held a conference call to discuss the motion on August 15, 2013. I instructed petitioners to provide firm evidence that a muscle biopsy had been ordered for R.P.C. and the date that the muscle biopsy would be performed. *See* Order, issued Aug. 20, 2013, at 3.

In response, petitioners filed a status report, indicating only that they were unable to give me the exact the date of the muscle biopsy until R.P.C.'s appointments in late September and early October and reiterating their belief that the biopsy would be scheduled for October 23, 2013. I pointed out that petitioners still had not provided

---

[7] It appears that the correct name of the hospital is Rady Children's Hospital which is located in San Diego. Petitioners filed medical records from that facility on April 24, 2013. *See* Pet. Ex. 16.

evidence that a muscle biopsy was being considered and ordered petitioners to provide this evidence by October 15, 2013. Order, issued Sept. 9, 2013, at 1. When petitioners failed to respond, I ordered them to respond by filing the required evidence or show cause why I should not dismiss the petition for failure to prosecute. Show Cause Order, issued Oct. 16, 2013, at 2. Petitioner has failed to respond.

## II. Medical Records.

The medical records indicate that R.P.C. first saw Dr. Richard Haas, a mitochondrial specialist, at the metabolic clinic at Rady Children's Hospital on December 14, 2010. He was referred to Dr. Haas for metabolic screening due to several lab abnormalities. Petitioners' Exhibit ["Pet. Ex."] 16, p. 12. At that visit, Dr. Haas concluded "there is nothing to suggest a metabolic disorder" in R.P.C.'s history or physical examination. *Id.* He further explained that R.P.C.'s abnormal lab results were non-specific and did "not point to a metabolic issue." *Id.* However, because several of R.P.C.'s treating physicians had expressed concern, Dr. Haas ordered that R.P.C. be screened for a possible metabolic disorder. *Id.*

Over the next two years, R.P.C. saw Dr. Haas on several occasions and also received treatment from the Neurology and Gastroenterology departments at Rady Children's Hospital. As Dr. Haas noted on July 19, 2011, except for a slightly elevated CPK[8] level, R.P.C.'s lab results were normal. Pet. Ex. 16, p. 32. Dr. Haas reiterated this fact to R.P.C.'s father during a March 19, 2013 phone call. Pet. Ex. 17, p 1.

There is a note from a February 6, 2013 visit with Dr. Xenia Horn, a gastroenterologist, indicating that she would "touch base" with Dr. Haas to see if a muscle biopsy could be performed concurrent with an endoscopy she was attempting to schedule.[9] Pet. Ex. 16, p. 65. However, there is no evidence that Dr. Haas thought a muscle biopsy was needed. In Dr. Haas' notes from his March 19, 2013 phone call with R.P.C.'s father, he indicated only that he would check R.P.C.'s CSF lactate level if tests being considered by R.P.C.'s neurologist, Dr. Doris Trauner, were performed but would prefer to wait until R.P.C. was under anesthetic for another procedure. Pet. Ex. 17, p. 1. In those same notes, Dr. Haas reiterated his opinion that "[t]here is no evidence of mitochondrial or metabolic disease." *Id.*

## III. Causation.

Thus, there is insufficient evidence in the medical records to support petitioners' claim of vaccine causation of autism. Moreover, petitioners have not filed the report of a medical expert as ordered. In fact, petitioners have not even clearly stated their claim

---

[8] CPK is the abbreviation for creatine phosphokinase, the former name for creatine kinase. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 436 (31st ed. 2007). Creatine kinase is "an $Mg^{2+}$ activated enzyme of the transferase class that catalyzes the phosphorylation of creatine by ATP to form phosphocreatine. *Id.*

[9] R.P.C.'s gastroenterologists have been attempting to schedule an endoscopy for R.P.C. since before February 11, 2011. Pet. Ex. 16, p. 23.

by filing an amended petition as ordered.

To receive compensation under the Program, petitioners must prove either: (1) that R.P.C. suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of R.P.C.'s vaccinations, or (2) that R.P.C. suffered an injury that was actually caused by a vaccine. *See* §§ 13(a)(1)(A) and 11(c)(1). Under the Vaccine Act, a special master cannot find a petitioner has proven his case by a preponderance of the evidence based upon "the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." § 13(a). Petitioners have failed to file sufficient medical records and evidence in this case. Thus, an examination of the record did not uncover any evidence that R.P.C. suffered a "Table Injury." Further, the record does not contain a medical opinion or any other persuasive evidence indicating that R.P.C.'s condition was vaccine-caused.

Accordingly, it is clear from the record in this case that petitioners have failed to demonstrate either that R.P.C. suffered a "Table Injury" or that R.P.C.'s injuries were "actually caused" by a vaccination. **This case is dismissed for insufficient proof and for failure to prosecute. The clerk shall enter judgment accordingly.**

**IT IS SO ORDERED.**

**s/Denise K. Vowell**
**Denise K. Vowell**
Chief Special Master